UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JANET HERZOG,               )
                                      )
             Plaintiff,      )
                                        )
     vs.                    )         11 C 5480
                                        )
ST. PETER LUTHERAN CHURCH,  )
and ST. PETER LUTHERAN SCHOOL,  )
                                        )
             Defendants.  )

## <u>MEMORANDUM OPINION</u>

CHARLES P. KOCORAS, District Judge:

       This matter comes before the Court on Defendants St. Peter Lutheran Church (the "Church") and St. Peter Lutheran School's (the "School") (collectively, "St. Peter") motion to dismiss Plaintiff Janet Herzog's ("Herzog") complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons stated below, St. Peter's motion is converted to a motion for summary judgment and is granted pursuant to Federal Rule of Civil Procedure 56.

## BACKGROUND

       This case arises out of alleged employment discrimination by St. Peter, a Lutheran church and parochial school. Between August 1987 and June 2009, Herzog was employed as a teacher at St. Peter. St. Peter employs both "lay teachers" and "called teachers." A called teacher at St. Peter is regarded as having been "called" to

her vocation by God. Before becoming a called teacher, an individual must attend theological courses at a Lutheran academic institution. The Missouri Synod, the governing body for Lutheran churches, considers called teachers to be Ministers of Religion.

Herzog began her employment at St. Peter as an elementary school lay teacher in 1987. Thereafter, Herzog enrolled at Concordia College, a Lutheran institution, where she studied the canons and doctrines of the Lutheran church. After completing her studies at Concordia College, St. Peter's congregation voted to extend Herzog a "call of the Ministry" in August 1988. Upon accepting St. Peter's invitation, Herzog was commissioned as a called teacher in a ceremony at the Church. As a called teacher, Herzog received a Minister of Religion Commissioned Diploma of Vocation ("Diploma of Vocation"), which provided that she "perform all duties of [her] office according to the Word of God and the confessional standards of the Evangelical Lutheran church as drawn from the Sacred Scriptures and contained in the Book of Concord." Herzog also received a Supplement to the Diploma of Vocation, which provided that as a called teacher, Herzog was expected to "teach faithfully the Word of God, the Sacred Scriptures in its truth and purity as set forth in all the symbolic books of the Lutheran church."

Herzog's status as a called teacher included certain benefits, including a pay increase and a special exemption on her income taxes that were available to ministerial employees. At the beginning of each academic year, Herzog would re-affirm her call at a ceremony at the Church, and she maintained her called status throughout her employment.

Herzog taught her students a variety of secular subjects. Spelling, reading, and English lessons were held five days per week; social studies and science were held two to three days per week; and art classes were held once or twice per week. Herzog used secular textbooks to teach each of these subjects and maintains that she did not incorporate religious principles into these classes. Although approximately half of the students at St. Peter were not Lutheran, the St. Peter Lutheran Church School Board Handbook required that its called teachers integrate Christian instruction into the study of every subject. In this vein, every science textbook included a sticker on the inside cover providing that, in the event of a conflict between the materials in the book and the tenets of the Lutheran faith, teachers at St. Peter would teach the Lutheran perspective. Herzog never encountered such conflicts in her teaching career.

In addition to these secular subjects, Herzog also held religion classes four days per week. Herzog maintains that she led religion classes by following the instructions in the teaching manuals accompanying the religion textbooks. On the day that Herzog

did not hold religion classes, she attended church services with her class. Herzog and her students prayed at the beginning and end of each school day. Additionally, Herzog annually volunteered her class to lead a church service and guided, instructed, and prepared her class for that service.

St. Peter's Divine Call Policy provides that the right to dismiss called teachers is vested in the Voters Assembly of the Congregation of the Church (the "Voters Assembly"). When a reduction in force is called for, the final recommendation as to which teachers should be selected for termination are to be made by the School Board and approved by the Voters Assembly. St. Peter's written policies prohibit discrimination based on sex or age.

In June 2009, St. Peter's Principal Bruce Rudi ("Rudi") allegedly proposed to terminate Herzog's employment to the Voters Assembly and told Herzog that his decision was based on budget constraints. On January 17, 2010, the Voters Assembly approved Herzog's termination. Two weeks later, St. Peter terminated Herzog's employment.

On October 31, 2011, Herzog filed an amended complaint alleging employment discrimination based on age, sex, and marital status in violation of federal and state law. St. Peter filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). St. Peter's motion is based on the "ministerial

- 4 -

exception," which provides that a court lacks jurisdiction to intrude into matters of a church's self-governance.[1]

The Supreme Court recently considered the applicability of the ministerial exception to claims of employment discrimination by a teacher at a parochial school. *Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*, 132 S.Ct. 694 (2012). The Court stayed briefing on St. Peter's motion to dismiss pending the Supreme Court's decision. Now that the Supreme Court has spoken definitively on the issue, we consider the merits of St. Peter's motion to dismiss.

## LEGAL STANDARD

### A. Characterization of St. Peter's Motion

St. Peter filed its motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Prior to *Hosanna-Tabor*, the Seventh Circuit held that a district court lacks jurisdiction to consider the merits of an employment discrimination claim when the ministerial exception is successfully invoked. *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1038-39 (7th Cir. 2006). However, the Supreme Court has since explicitly stated that the exception operates as an affirmative defense rather than a jurisdictional bar. *Hosanna-Tabor*, 132 U.S. at 709

---

[1] St. Peter also seeks to dismiss Herzog's claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). As the Court has granted summary judgment in St. Peter's favor, it need not consider the arguments presented in St. Peter's 12(b)(6) motion to dismiss.

n.4.  Therefore, we treat St. Peter's motion to dismiss for lack of subject matter as a

motion to dismiss for failure to state a claim under Rule 12(b)(6).

The Court allowed limited discovery to determine whether the ministerial

exception applies.  When a court presented with a Rule 12(b)(6) motion to dismiss

considers matters outside the pleadings, it must convert the motion to dismiss into a

motion for summary judgment.  Fed. R. Civ. P. 12(d); *Gen. Ins. Co. of Amer. v. Clark*

*Mall Corp.*, 644 F.3d 375, 378 (7th Cir. 2011).  If a court converts a motion to dismiss

into a motion for summary judgment, "[a]ll parties must be given a reasonable

opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P.

12(d).  Here, the parties exchanged written discovery, submitted affidavits, took three

depositions, and submitted statements of material facts in compliance with the local

rules governing summary judgment.[2]  *See* N.D. Ill. L.R. 56.1(a)(3).  With the benefit of

hundreds of pages of exhibits and briefing, the Court is satisfied that the parties have

had ample opportunity to present all the material pertinent to a summary judgment

motion.  *See Miller v. Herman*, 600 F.3d 726, 733 (7th Cir. 2010).

---

[2]  Herzog maintains that St. Peter has failed to comply with Local Rule 56.1(a)(3) because it did not file a "statement of material facts."  In open court on May 10, 2012, the Court waived strict compliance with Local Rule 56.1.  Moreover, St. Peter filed a "Summary of Evidentiary Record" that substantively complied with Local Rule 56.1 and is the functional equivalent of a statement of material facts.

- 6 -

**B.     Summary Judgment Standard**

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Winsley v. Cook Cnty.*, 563 F.3d 598, 602-03 (7th Cir. 2009).  A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-moving party.  *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010).  In considering a motion for summary judgment, a court construes all facts and draws all reasonable inferences in favor of the non-moving party.  *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2010).

## DISCUSSION

The ministerial exception, grounded in the Free Exercise and Establishment Clauses of the First Amendment, precludes claims of employment discrimination against a religious institution brought by its ministers.  *Hosanna-Tabor*, 132 S.Ct. at 705 (collecting cases).  Enforcing employment discrimination laws may, in some contexts, "depriv[e] the church of control over the selection of those who will personify its beliefs," thereby infringing the Free Exercise Clause of the First Amendment.  *Id.* at 706; *see Tomic*, 442 F.3d at 1039.  Additionally, "[a]ccording the state the power to determine which individuals will minister to the faithful also violates the Establishment

Clause, which prohibits government involvement in such ecclesiastical decisions." *Hosanna-Tabor*, 132 S.Ct. at 706.

St. Peter maintains that there is no genuine issue of material fact that Herzog was a "minister" and that the ministerial exception thus bars her claims. The Supreme Court recently addressed the applicability of the ministerial exception for the first time in *Hosanna-Tabor*.

## I.      The *Hosanna-Tabor* Decision

In *Hosanna-Tabor*, the Supreme Court upheld the right of religious institutions "to select and control who will minister to the faithful," thus barring "suits brought on behalf of ministers against their churches, claiming termination in violation of employment discrimination laws." *Id.* at 696, 698. The Supreme Court was called on to decide whether the plaintiff, Cheryl Perich ("Perich"), qualified as a "minister." Perich was a called teacher at Hosanna-Tabor Lutheran Church and School ("Hosanna-Tabor"). *Id.* at 700. In order to receive called status, Perich completed theological courses, obtained the endorsement of her local religious district, and passed an oral examination. *Id.* at 699. Upon being commissioned as a called teacher, Perich received the formal title "Minister of Religion, Commissioned." *Id.*

As a called teacher, Perich taught both secular and religion classes. In addition to teaching religion classes four days per week, Perich led the students in prayer three

times daily, attended a weekly chapel service, and led the chapel service twice each year. *Id.* at 700. After several years of employment at Hosanna-Tabor, Perich developed narcolepsy and took disability leave. *Id.* Hosanna-Tabor ultimately found a teacher to replace Perich, and the congregation voted to replace her and recommended that she resign. *Id.* Perich refused, and Hosanna-Tabor rescinded her called status and terminated her for "insubordination and disruptive behavior. *Id.*

The Supreme Court unanimously held that the ministerial exception applied to prevent Perich's claim in light of several factors, including "the formal title given Perich by the Church, the substance reflected in that title, her own use of that title, and the important religious functions she performed for the Church." *Id.* at 708. In particular, the Supreme Court called attention to the following facts: (1) Hosanna-Tabor held Perich out as a minister; (2) Perich received theological training followed by a formal process of commissioning; (3) Perich held herself out as a minister of the church; and (4) "Perich's job duties reflected a role in conveying the Church's message and carrying out its mission." *Id.* at 707-08.

## II.    Applicability of Ministerial Exception to Herzog's Claims

In *Hosanna-Tabor*, the Supreme Court declined to "adopt a rigid formula for deciding when an employee qualifies as a minister," noting that its holding was limited to the facts of the case. *Id.* Nevertheless, the facts of this case are sufficiently similar

to those in *Hosanna-Tabor*, such that we are satisfied that the ministerial exception applies to Herzog's claims.

Notably, each of the factors that the Supreme Court considered in *Hosanna-Tabor* are present here. First, both Hosanna-Tabor and St. Peter held their called teachers out as ministers: both Perich and Herzog were extended Diplomas of Vocation by their respective congregations; both of their official titles were "Minister of Religion, Commissioned;" both received supplements to their Diplomas of Vocation, which provided that, as teachers, they were to teach faithfully the Word of God and the Sacred Scriptures; and they were each extended a "call" by their respective congregations.

Second, both Perich and Herzog received theological training followed by a formal process of commissioning: they completed college-level courses in theology; they were required to obtain the endorsement of their local Synod district; and both were commissioned as ministers by their congregations, which recognized God's call to teach.

Third, both Perich and Herzog held themselves out as ministers of their churches: they accepted the formal call to religious service; they claimed a special housing allowance on their taxes available to employees serving as ministers; and they affirmed their status as called teachers.[3]

---

[3] Perich stated "I feel that God is leading me to serve in the teaching ministry . . . . I am anxious to be in the teaching ministry again soon," Herzog wrote "God has blessed the St. Peter church and school family for many years and I hope to help the school continue in its ministry to the children of the church."

Finally, both Perich and Herzog's duties reflected a role in conveying their churches' message and carrying out their missions: both taught their students religion four days per week; they participated in classroom prayers multiple times per day; they took their students to chapel services once a week; and they both participated in devotional activities with their students. Given the patently similar roles that Herzog and Perich played in their respective institutions, there is no genuine issue of material fact that Herzog is the type of employee to which the ministerial exception applies.

Herzog attempts to distinguish *Hosanna-Tabor* in two ways. First, Herzog observes that whereas Perich was terminated for religious reasons, Herzog was allegedly terminated based on economic reasons. However, the Supreme Court explicitly stated that the reasons underlying a church's employment decisions are wholly immaterial to determining whether the ministerial exception applies in the first instance. *Hosanna-Tabor*, 132 S.Ct. at 709 ("The purpose of the exception is not to safeguard a church's decision to fire a minister only when it is made for a religious reason."); *accord Alicia-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 703 (7th Cir. 2003) ("It is therefore not our role to determine whether the church had a secular or religious reason for the alleged mistreatment of [the plaintiff]. The only question is that of the appropriate characterization of her position."). The ministerial exception

prevents the Court from involving itself in the church's decision, whatever the predicate for that decision.[4]

Second, Herzog contends that her role at St. Peter was largely secular because she spent most of her time in class teaching secular subjects.  Herzog asserts that her case is more akin to *DeMarco v. Holy Cross High School,* in which a lay math teacher at a Catholic school filed a discrimination suit against his employer.  4 F.3d 166 (2nd Cir. 1993).  The Second Circuit declined to apply the ministerial exception because the plaintiff only had minor religious duties, such as leading the students in prayer and taking them to mass.  *Tomic*, 442 F.3d at 1041 (summarizing the analysis in *DeMarco*).  However, *DeMarco* is easily distinguishable, as the teacher in that case was not a commissioned minister, did not hold himself out as such, and did not teach religion.

More importantly, the Supreme Court in *Hosanna-Tabor* cautioned against placing too much emphasis on a plaintiff's secular duties.  132 S.Ct. at 708.  Like Herzog, Perich's religious duties only consumed 45 minutes of each workday.  132

---

[4] Herzog also cites to *Prince of Peace Lutheran Church v. Linklater*, 28 A.3d 1171 (Md. 2011), in which the Court of Appeals of Maryland declined to apply the ministerial exception because there was no contention that the church's allegedly illicit conduct was related to its ministerial function.  However, the plaintiff in that case did not allege an adverse employment decision, but rather filed a suit alleging sexual harassment.  The Supreme Court in *Hosanna-Tabor* noted the importance of this distinction, explaining that "[t]he case before us is an employment discrimination suit brought on behalf of a minister challenging her church's decision to fire her. Today, we hold only that the ministerial exception bars such a suit.  We express no view on whether the exception bars other types of suits, including actions by employees alleging breach of contract or tortious conduct by their religious employers."  132 S.Ct. at 710.

S.Ct. at 708. However, this factor "cannot be considered in isolation, without regard to the nature of the religious functions performed and other considerations discussed above." *Id.* at 709. The factors identified by the Supreme Court, as applied to Herzog's employment, conclusively establish that she was a minister for the purposes of the ministerial exception.

Additionally, Herzog's status as a called teacher permeated through to her secular responsibilities. Herzog's Supplement to the Diploma of Vocation required her to "teach faithfully the Word of God, the Sacred Scriptures in its truth and purity as set forth in all the symbolic books of the Evangelical Lutheran church;" "to exemplify the Christian faith and life" in her teachings; "to show a due concern for all the phases of ministry, especially to work for the promotion and improvement of all efforts in Christian education;" and "to live in Christian unity with the members of the congregation and co-workers, and to seek earnestly the advancement of the kingdom of God at home and abroad." These principles were also endorsed by the St. Peter Lutheran Church School Board Handbook, which required that its called teachers integrate Christian instruction into the study of every subject.

Herzog has failed to sufficiently distinguish her case from *Hosanna-Tabor.* The marked similarities between these two cases establish that the ministerial exception is

applicable to Herzog's claims as a matter of law.  Accordingly, St. Peter's motion for

summary judgment is granted.

## CONCLUSION

Based on the foregoing, St. Peter's motion to dismiss, converted into a motion

for summary judgment, is granted.

Charles P. Kocoras
United States District Judge

Dated:   August 1, 2012